# Exhibit A
# to
# Sanghvi Declaration

Case 6:25-cv-00119-ADA Document 41-2 Filed 04/21/25 Page 2 of 24



**PRESIDENTIAL ACTIONS**

EXCLUSIONS FROM FEDERAL LABOR–MANAGEMENT RELATIONS PROGRAMS

Executive Orders

March 27, 2025

By the authority vested in me as President by the Constitution and the laws of the United States of America, including sections 7103(b)(1) of title 5 and 4103(b) of title 22, United States Code, to enhance the national security of the United States, it is hereby ordered:

Section 1. Determinations. (a) The agencies and agency subdivisions set forth in section 2 of this order are hereby determined to have as a primary function intelligence, counterintelligence, investigative, or national security work. It is also hereby determined that Chapter 71 of title 5, United States Code, cannot be applied to these agencies and agency subdivisions in a manner consistent with national security requirements and considerations.

(b) The agency subdivisions set forth in section 3 of this order are hereby determined to have as a primary function intelligence, counterintelligence, investigative, or national security work. It is also hereby determined that Subchapter X of Chapter 52 of title 22, United States Code, cannot be applied to these subdivisions in a manner consistent with national security requirements and considerations.

Sec. 2. Additional National Security Exclusions. Executive Order 12171 of November 19, 1979, as amended, is further amended by:

(a) In section 1–101, adding "and Section 1–4" after "Section 1–2" in both places that term appears.

(b) Adding after section 1–3 a new section 1–4 that reads:

"1–4. *Additional Exclusions*.

1-401.  The Department of State.

1-402.  The Department of Defense, except for any subdivisions excluded pursuant to section 4 of the Executive Order of March 27, 2025, entitled 'Exclusions from Federal Labor-Management Relations Programs.'

1-403.  The Department of the Treasury, except the Bureau of Engraving and Printing.

1-404.  The Department of Veterans Affairs.

1-405.  The Department of Justice.

1-406.  Agencies or subdivisions of the Department of Health and Human Services:

(a)  Office of the Secretary.

(b)  Food and Drug Administration.

(c)  Centers for Disease Control and Prevention.

(d)  Administration for Strategic Preparedness and Response.

(e)  Office of the General Counsel.

(f)  Office of Refugee Resettlement, Administration for Children and Families.

(g)  National Institute of Allergy and Infectious Diseases, National Institutes of Health.

1-407.  Agencies or subdivisions of the Department of Homeland Security:

(a)  Office of the Secretary.

(b)  Office of the General Counsel.

(c)  Office of Strategy, Policy, and Plans.

(d)  Management Directorate.

(e)  Science and Technology Directorate.

(f)  Office of Health Security.

(g)  Office of Homeland Security Situational Awareness.

(h)  U.S. Citizenship and Immigration Services.

(i)  United States Immigration and Customs Enforcement.

(j)  United States Coast Guard.

(k)  Cybersecurity and Infrastructure Security Agency.

(l)  Federal Emergency Management Agency.

1-408.  Agencies or subdivisions of the Department of the Interior:

(a)  Office of the Secretary.

(b)  Bureau of Land Management.

(c)  Bureau of Safety and Environmental Enforcement.

(d)  Bureau of Ocean Energy Management.

Case 6:25-cv-00114-ADA    Document 41-2    Filed 04/21/25    Page 4 of 24

1-409.  The Department of Energy, except for the Federal Energy Regulatory Commission.

1-410.  The following agencies or subdivisions of the Department of Agriculture:

(a)  Food Safety and Inspection Service.

(b)  Animal and Plant Health Inspection Service.

1-411.  The International Trade Administration, Department of Commerce.

1-412.  The Environmental Protection Agency.

1-413.  The United States Agency for International Development.

1-414.  The Nuclear Regulatory Commission.

1-415.  The National Science Foundation.

1-416.  The United States International Trade Commission.

1-417.  The Federal Communications Commission.

1-418.  The General Services Administration.

1-419.  The following agencies or subdivisions of each Executive department listed in section 101 of title 5, United States Code, the Social Security Administration, and the Office of Personnel Management:

(a)  Office of the Chief Information Officer.

(b)  any other agency or subdivision that has information resources management duties as the agency or subdivision's primary duty.

1-499.  Notwithstanding the forgoing, nothing in this section shall exempt from the coverage of Chapter 71 of title 5, United States Code:

(a)  the immediate, local employing offices of any agency police officers, security guards, or firefighters, provided that this exclusion does not apply to the Bureau of Prisons;

(b)  subdivisions of the United States Marshals Service not listed in section 1-209 of this order; or

(c)  any subdivisions of the Departments of Defense or Veterans Affairs for which the applicable Secretary has issued an order suspending the application of this section pursuant to section 4 of the Executive Order of March 27, 2025, entitled 'Exclusions from Federal Labor–Management Relations Programs.'"

Sec. 3.  Foreign Service Exclusions.  Executive Order 12171, as amended, is further amended by:

(a)  In the first paragraph:

(i)  adding "and Section 4103(b) of Title 22," after "Title 5"; and

(ii)  adding "and Subchapter X of Chapter 52 of Title 22" after "Relations Program.".

(b)  Adding after section 1–102 a new section 1–103 that reads:

"1–103.  The Department subdivisions set forth in section 1–5 of this order are hereby determined to have as a primary function intelligence, counterintelligence, investigative, or national security work.  It is also hereby determined that Subchapter X of Chapter 52 of title 22, United States Code, cannot be applied to those subdivisions in a manner consistent with national security requirements and considerations.  The subdivisions set forth in section 1–5 of this order are hereby excluded from coverage under Subchapter X of Chapter 52 of title 22, United States Code."

(c)  Adding after the new section 1–4 added by section 2(b) of this order a new section 1–5 that reads:

"1–5.  Subdivisions of Departments Employing Foreign Service Officers.

1–501.  Subdivisions of the Department of State:

(a)  Each subdivision reporting directly to the Secretary of State.

(b)  Each subdivision reporting to the Deputy Secretary of State.

(c)  Each subdivision reporting to the Deputy Secretary of State for Management and Resources.

(d)  Each subdivision reporting to the Under Secretary for Management.

(e)  Each subdivision reporting to the Under Secretary for Arms Control and International Security.

(f)  Each subdivision reporting to the Under Secretary for Civilian Security, Democracy, and Human Rights.

(g)  Each subdivision reporting to the Under Secretary for Economic Growth, Energy, and Environment.

(h)  Each subdivision reporting to the Under Secretary for Political Affairs.

(i)  Each subdivision reporting to the Under Secretary for Public Diplomacy.

(j)  Each United States embassy, consulate, diplomatic mission, or office providing consular services.

1–502.  Subdivisions of the United States Agency for International Development:

(a)  All Overseas Missions and Field Offices.

(b)  Each subdivision reporting directly to the Administrator.

(c)  Each subdivision reporting to the Deputy Administrator for Policy and Programming.

(d)  Each subdivision reporting to the Deputy Administrator for Management and Resources.".

Sec. 4.  Delegation of Authority to the Secretaries of Defense and Veterans Affairs.  (a) Subject to the requirements of subsection (b) of this section, the Secretaries of Defense and Veterans Affairs are delegated authority under 5 U.S.C. 7103(b)(1) to issue orders suspending the application of section 1-402 or 1-404 of Executive Order 12171, as amended, to any subdivisions of the departments they supervise, thereby bringing such subdivisions under the coverage of the Federal Service Labor-Management Relations Statute.

(b)  An order described in subsection (a) of this section shall only be effective if:

(i)   the applicable Secretary certifies to the President that the provisions of the Federal Service Labor-Management Relations Statute can be applied to such subdivision in a manner consistent with national security requirements and considerations; and

(ii)  such certification is submitted for publication in the *Federal Register* within 15 days of the date of this order.

Sec. 5.  Delegation of Authority to the Secretary of Transportation.  (a)  The national security interests of the United States in ensuring the safety and integrity of the national transportation system require that the Secretary of Transportation have maximum flexibility to cultivate an efficient workforce at the Department of Transportation that is adaptive to new technologies and innovation.  Where collective bargaining is incompatible with that mission, the Department of Transportation should not be forced to seek relief through grievances, arbitrations, or administrative proceedings.

(b)  The Secretary of Transportation is therefore delegated authority under section 7103(b) of title 5, United States Code, to issue orders excluding any subdivision of the Department of Transportation, including the Federal Aviation Administration, from Federal Service Labor-Management Relations Statute coverage or suspending any provision of that law with respect to any Department of Transportation installation or activity located outside the 50 States and the District of Columbia.  This authority may not be further delegated.  When making the determination required by 5 U.S.C. 7103(b)(1) or 7103(b)(2), the Secretary of Transportation shall publish his determination in the *Federal Register.*

Sec. 6.  Implementation.  With respect to employees in agencies or subdivisions thereof that were previously part of a bargaining unit but have been excepted under this order, each applicable agency head shall, upon termination of the applicable collective bargaining agreement:

(a)  reassign any such employees who performed non–agency business pursuant to section 7131 of title 5 or section 4116 of title 22, United States Code, to performing solely agency business; and

(b)  terminate agency participation in any pending grievance proceedings under section 7121 of title 5, United States Code, exceptions to arbitral awards under section 7122 of title 5, United States Code, or unfair labor practice proceedings under section 7118 of title 5 or section 4116 of title 22, United States Code, that involve such employees.

Sec. 7.  Additional Review.  Within 30 days of the date of this order, the head of each agency with employees covered by Chapter 71 of title 5, United States Code, shall submit a report to the President that identifies any agency subdivisions not covered by Executive Order 12171, as amended:

(a) that have as a primary function intelligence, counterintelligence, investigative, or national security work, applying the definition of "national security" set forth by the Federal Labor Relations Authority in *Department of Energy, Oak Ridge Operations, and National Association of Government Employees Local R5-181*, 4 FLRA 644 (1980); and

(b)  for which the agency head believes the provisions of Chapter 71 of title 5, United States Code, cannot be applied to such subdivision in a manner consistent with national security requirements and considerations, and the reasons therefore.

Sec. 8.  General Provisions.  (a)  Nothing in this order shall be construed to impair or otherwise affect:

(i)  the authority granted by law to an executive department or agency, or the head thereof; or

(ii)  the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b)  This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c)  This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

DONALD J. TRUMP

THE WHITE HOUSE,

March 27, 2025.

NEWS

ADMINISTRATION

ISSUES

CONTACT

VISIT

GALLERY

EOP



THE WHITE HOUSE

1600 Pennsylvania Ave NW
Washington, DC 20500

  

WH.GOV

Copyright

Privacy

Style Guide

# Exhibit B
# to
# Sanghvi Declaration



**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT**
Washington, DC 20415

The Director

# MEMORANDUM

| | |
|---|---|
| **TO:** | Heads and Acting Heads of Departments and Agencies |
| **FROM:** | Charles Ezell, Acting Director, U.S. Office of Personnel Management |
| **DATE**: | March 27, 2025 |
| **RE**: | Guidance on Executive Order *Exclusions from Federal Labor-Management Programs* |

On March 27, 2025, President Trump signed an executive order entitled *Exclusions from Federal Labor-Management Relations Programs* (*Exclusions*). This order invoked the President's authority under 5 U.S.C § 7103(b)(1) and 22 U.S.C. § 4103(b) to exempt agencies and agency subdivisions from the provisions of the Federal Service Labor-Management Relations Statute and the Foreign Service Labor-Management Relations Statute (individually and collectively, the FSLMRS).[1] The President's Executive Order directs that the FSLMRS will no longer apply to the following agencies and agency subdivisions (collectively, the "covered agencies and subdivisions"):

- The Department of Defense;

- The Department of State;

- The Department of the Treasury, except the Bureau of Engraving and Printing;

- The Department of Veterans Affairs (VA);

- The Department of Justice, except certain components of the U.S. Marshals Service;

- Subdivisions of the Department of Homeland Security:
  - Departmental Headquarters components;
  - U.S. Citizenship and Immigration Services;
  - Immigration and Customs Enforcement;
  - U.S. Coast Guard;
  - The Cybersecurity and Infrastructure Security Agency; and
  - The Federal Emergency Management Agency;

---

[1] These provisions are codified in chapter 71 of title 5, United States Code, and subchapter X of chapter 52 of title 22, United States Code.

- Subdivisions of the Department of Health and Human Services:
    - Office of the Secretary;
    - Office of the General Counsel;
    - Food and Drug Administration;
    - Centers for Disease Control and Prevention;
    - The Administration for Strategic Preparedness and Response;
    - The National Institute for Allergy and Infectious Diseases, National Institutes of Health; and
    - Office of Refugee Resettlement, Administration for Children and Families.

- The Department of Energy, except the Federal Energy Regulatory Commission;

- Subdivisions of the Department of the Interior:
    - Office of the Secretary;
    - Bureau of Land Management;
    - Bureau of Safety and Environmental Enforcement;
    - Bureau of Ocean Energy Management;

- Subdivisions of the Department of Agriculture:
    - The Food Safety and Inspection Service;
    - The Animal and Plant Health Inspection Service;

- The International Trade Administration within the Department of Commerce;

- The Environmental Protection Agency;

- The U.S. Agency for International Development;

- The Nuclear Regulatory Commission;

- The National Science Foundation;

- The International Trade Commission;

- The Federal Communications Commission;

- The General Services Administration; and

- The Office of the Chief Information Officer (CIO) in each Executive department, as well as the CIO offices for the U.S. Office of Personnel Management (OPM) and the Social Security Administration, and any other agency or subdivision that has information

resources management duties as the agency or subdivision's primary duty.[2]

By operation of 5 U.S.C. § 7103(b) and *Exclusions*, covered agencies and subdivisions are no longer subject to the collective-bargaining requirements of chapter 71 of part III, subpart F of title 5 (5 U.S.C. §§ 7101-7135). Consequently, those agencies and subdivisions are no longer required to collectively bargain with Federal unions. Also, because the statutory authority underlying the original recognition of the relevant unions no longer applies, unions lose their status as the "exclusive[ly] recogni[zed]" labor organizations for employees of the agencies and agency subdivisions covered by *Exclusions*.[3]

Agencies should consult with their General Counsels as to how to implement the President's directive in *Exclusions*. Agencies should also begin to consider and implement the changes described below and any others that agencies deem necessary, consistent with the President's national security determination. OPM highlights some common provisions of agency CBAs that may be inconsistent with the President's policies and management priorities.

## I.     Performance Accountability

Merit system principles codified at 5 U.S.C. § 2301(6) direct agencies to separate employees who cannot or will not improve their performance to meet required standards. This often does not occur. When asked what happens to poor performers in their work unit, a plurality of Federal employees respond that they "remain in the work unit and continue to underperform."[4] Only a quarter of agency supervisors report that they are confident they could remove a seriously underperforming employee.[5]

Strengthening performance accountability in the Federal workforce is a high priority of President Trump and his Administration. The President believes that he must be able to effectively supervise Federal employees to take care that the law is faithfully executed and to protect America's national security. Shortly after taking office the President issued multiple directives to facilitate the separation of underperforming employees.[6]

Agency CBAs often create procedural impediments to separating poor performers beyond those required by statute or regulation. Covered agencies and subdivisions should seek to bring

---

[2] The Executive Order excludes the immediate employing offices of police and firefighters. It also provides a process for the Secretaries of Defense and Veterans Affairs to retain collective bargaining in subdivisions of their agencies if they certify that doing so does not impair national security.

[3] *Cf.* 5 U.S.C. § 7111(a) ("An agency shall accord exclusive recognition to a labor organization if the organization has been selected as the representative . . . ."), *id.* § 7114(a)(1) (authorizing the exclusively recognized labor organization to "negotiate collective bargaining agreements covering[] all employees in the unit.")

[4] https://www.opm.gov/fevs/reports/opm-fevs-dashboard/.

[5] U.S. Merit Systems Protection Board, *Remedying Unacceptable Employee Performance in the Federal Civil Service* (June 18, 2019), at p. 15.

[6] *See* Executive Order 14171 of Jan. 20, 2025 (*Restoring Accountability to Policy-Influencing Positions Within the Federal Workforce*); Memorandum of January 20, 2025 (*Restoring Accountability for Career Senior Executives*); Executive Order 4211 of Feb. 12, 2025 (*One Voice for America's Foreign Relations*).

their policies into alignment with the specific Administration priorities below.

### A. Limit PIPs to 30 Days.

The Civil Service Reform Act (CSRA) requires agencies to provide underperforming employees with an opportunity to demonstrate acceptable performance before dismissing them under chapter 43 of title 5, United States Code.[7] These opportunity periods are commonly known as Performance Improvement Periods (PIPs). Executive Order 13839 of May 25, 2018. (*Promoting Accountability and Streamlining Removal Procedures Consistent with Merit System Principles*) generally standardized PIPs at 30 days. Executive Order 14003 of January 22, 2021 (*Protecting the Federal Workforce*) rescinded Executive Order 13839 and directed agencies to reverse policies effectuated under it. Under this directive, agencies increased PIPs from 30 days to 60 to 120 days. However, Executive Order 14171 of January 20, 2025 (*Restoring Accountability to Policy-Influencing Positions Within the Federal Workforce*) revoked Executive Order 14003 and directed agencies to reverse disciplinary and unacceptable-performance policies effectuated pursuant to it.

Prior OPM guidance has explained that Executive Order 14171 now requires agencies to return to the policies of Executive Order 13839.[8] Agencies are accordingly required to, consistent with applicable law, return PIPs to 30 days. Where a CBA requires PIPs of more than 30 days, agencies must generally wait until such CBAs expire or otherwise terminate before shortening PIPs.[9] After covered agencies and subdivisions terminate CBAs that require PIPs of more than 30 days, they should take prompt action to reduce PIPs for former bargaining unit employees to no more than 30 days.

### B. Use Chapters 43 and 75 for Performance-Based Removals.

Covered agencies and subdivisions are required to revert their discipline and unacceptable performance policies to those set in the first Trump Administration under Executive Order 13839. This includes the directive to use the procedures of chapter 75 of title 5, United States Code, in addition to chapter 43 (discussed above), to separate employees for unacceptable performance in appropriate cases.[10]

Chapter 75 actions do not require a PIP but bear a higher burden of proof than chapter 43 actions. Many agency CBAs functionally prohibit using chapter 75 procedures by requiring PIPs for all performance-based separations. Covered agencies and subdivisions that have terminated their CBAs should thereafter use chapter 75 procedures to separate underperforming employees without PIPs in appropriate cases. Agencies may continue to use chapter 43 procedures in appropriate cases.

### C. VA Should Resume Use of Section 714.

---

[7] 5 U.S.C. 4202(c)(6).
[8] OPM, *Guidance on Revocation of Executive Order 14003* (Feb. 7, 2025).
[9] 5 U.S.C. 7116(a)(7).
[10] See section 2(h) of Executive Order 13839.

In 38 U.S.C. § 714, Congress gave VA special authority to remove some employees for poor performance without a PIP and with a lower burden of proof than chapter 43 actions. The Biden Administration discontinued use of section 714 authority after an arbitrator held that VA could not renegotiate its CBA to eliminate contractual PIPs. VA should, upon termination of its CBA, consider whether to resume use of section 714 authority in appropriate cases. Where facts and circumstances warrant, VA should cease providing covered employees with PIPs before separating them for poor performance under section 714.

### D.  Discontinue Grievance Participation.

In keeping with the provisions of the FSLMRS, CBAs provide for binding arbitration of union grievances, including disputes over whether personnel actions were justified.[11] To implement *Exclusions*, agencies should cease participating in grievance procedures after terminating their CBAs. To the extent that covered agencies and subdivisions are litigating grievances before an arbitrator when they terminate their CBAs, they should discontinue participation in such proceedings upon termination. Agencies can and should compensate arbitrators for work performed prior to the termination of the CBA, but not for any work performed thereafter. Agencies should not participate in further grievance arbitration proceedings following termination of their CBAs.

## II.    Effective and Efficient Government

It is the policy of the President and his Administration to eliminate waste, bloat, and insularity within agencies and operate them more efficiently. Covered agencies and subdivisions should therefore take the following actions after terminating their CBAs.

### A.  Disregard Contractual RIF Articles.

The President has directed agencies to prepare large-scale reductions in force (RIFs).[12] OPM previously provided guidance about agency collective bargaining obligations when undertaking RIFs.[13] Covered agencies and subdivisions that terminate their CBAs are advised that this guidance will no longer apply. After terminating their CBAs, covered agencies and subdivisions should conduct RIFs consistent with applicable statutory and regulatory requirements, but without regard to provisions in terminated CBAs that go beyond those requirements.

### B.  Return to In-Person Work.

The President considers returning agency employees to in-person work necessary for effective and efficient agency operations. The President issued a memorandum generally requiring

---

[11] 5 U.S.C. § 7121.
[12] OPM, *Guidance on Agency RIF and Reorganization Plans Requested by  Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative* (February 26, 2025).
[13] OPM, *Guidance on Collective Bargaining in Connection with Reductions in Force* (March 12, 2025).

in-person work on the first day of his Administration.[14] OPM guidance has explained that substantive telework levels and the substantive determination of which positions are eligible for telework or remote work are non-negotiable management rights.[15] However, agency CBAs sometimes impose procedural restrictions on agency return to work policies that do not violate non-negotiable management rights. Upon termination of these CBAs, covered agencies and subdivisions should swiftly implement the President's directives in *Return to In-Person Work*.

### C.  Use Agency Resources for Agency Business.

The FSLMRS permits unions to negotiate to allow agency employees to perform union representational work instead of agency business during their official duty hours.[16] Contractual authorization for "taxpayer-funded union time" terminates when agency CBAs are terminated. Additionally, employees no longer have representational activities to conduct once their agency or subdivision has been excluded from the FSLMRS coverage. *Exclusions* requires agencies to promptly return such employees to performing solely agency business. Upon termination of any CBAs that require taxpayer-funded union time, agencies should reassign employees on union time to duties that solely include agency business.

Many agency CBAs similarly provide Federal unions with free use of agency resources (such as office space) or commit the agency to cover certain union expenses (such as the cost of travel and per diems). Following termination of CBAs that require such subsidies, covered agencies and subdivisions should promptly discontinue them and use agency resources only for agency business.

### D.  End Allotments Through Agency Payroll Systems.

The FSLMRS requires agencies to deduct union dues from employees' pay upon request.[17] Agency resources are expended to set up those payroll deductions and process payments, and many agency CBAs contractually commit agencies to making such allotments according to specified procedures. When a covered agency terminates its CBAs, those contractual commitments no longer apply, and the covered agency should terminate allotments except where required by statute. Agency employees may make other arrangements for dues payments if they wish to do so. However, agency resources ordinarily should not be expended to facilitate payment of union dues.

cc: Chief Human Capital Officers (CHCOs), Deputy CHCOs, Human Resources Directors, and Chiefs of Staff

---

[14] Memorandum of January 20, 2025 (*Return to In-Person Work*).
[15] OPM, *Guidance on Collective Bargaining Obligations in Connection with Return to In-Person Work* (February 3, 2025).
[16] 5 U.S.C. 7131(d), 22 U.S.C. 4118(d)(4).
[17] 5 U.S.C. 7115, 22 U.S.C. 4118(a).

# Exhibit C
# to
# Sanghvi Declaration

| Share | Tweet | Email | Share | Print |
|-------|-------|-------|-------|-------|

Home (https://www.afge.org/) > AFGE Stories (https://www.afge.org/articles/) > What AFGE Is Doing: A Recap of AFGE's Major Actions Against Trump's Attacks on Civil Service (https://www.afge.org/article/what-afge-is-doing-a-recap-of-afges-major-actions-against-trumps-attacks-on-civil-service-2/)



# What AFGE Is Doing: A Recap of AFGE's Major Actions Against Trump's Attacks on Civil Service

*March 03, 2025*

**Categories:** **The Insider (https://www.afge.org/articles/?Category=84)**

It's been only six weeks since President Trump took office, but the damage to our government and the U.S.'s standing in the world has been massive. AFGE and our members, however, are fighting back. Here's a quick recap of the major actions we have taken:

1. **Probationary employees:** We filed a **lawsuit (/article/afge-files-lawsuit-against-opm-for-illegal-mass-firings-of-probationary-employees/)** against the administration for its illegal mass firings of probationary employees. A federal judge on Feb. 27 **ruled (/publication/federal-court-finds-**

firing-of-probationary-federal-employees-illegal/) that the mass firings were unlawful, saying OPM has no authority to fire employees employed by other agencies.

2. **USAID bill:** We worked with members of Congress to introduce a bill, **H.R. 1196 (https://www.congress.gov/bill/119th-congress/house-bill/1196)**, to prohibit the use of federal funds to eliminate the U.S. Agency for International Development (USAID). The agency was one of the first and biggest targets of the Trump administration, which has proceeded to **end (https://www.reuters.com/world/us/usaid-workers-say-goodbye-headquarters-trump-drastically-cuts-foreign-aid-2025-02-27/)** more than 90% of its foreign aid contracts. AFGE and allies are pursuing the next step of a **lawsuit (/article/afge-allies-vow-to-continue-fight-to-save-usaid/)** that seeks to stop the administration's illegal attempt to shut down USAID. The recent decision by a judge to allow the Trump administration to put employees on leave was not on the merit of the case but rather jurisdiction – that the case should be heard in federal labor court. In addition to the lawsuit, we're also working with Local 1534 which represents USAID employees, to file grievances over its violations of the labor-management contract and appeals to the Merit Systems Protection Board (MSPB) for unlawful terminations of employees. To keep our members informed of the current situation including lawsuits that affect them, AFGE created a new website for USAID employees at **www.afge.org/usaid (/take-action/campaigns/we-are-afge-strong/usaid-strong/)**. The website also provides resources such as ways they can fight back the attack on their agency, Executive Action Toolkit, RIF FAQ, Probationary FAQ, education resources, and more.

3. **Musk's emails:** Elon Musk's Office of Personnel Management (OPM) **backtracked (https://www.govexec.com/workforce/2025/02/opm-says-musk-demand-feds-report-accomplishments-voluntary/403221/?oref=ge-mini-feed)** on its email requiring federal workers to list five things they did the past week or risk termination after AFGE **threatened (/publication/afge-president-everett-kelley-response-to-elon-musks-demand-for-federal-workers-justify-their-jobs-or-resign/)** to challenge any unlawful terminations of our members. AFGE issued a statement and provided **guidance (/take-action/campaigns/we-are-afge-strong/executive-action-toolkit/guidance-opm-email/)** to members on the issue right after Musk sent the email that caused confusion and stress among the federal workforce. Musk sent another email the following week. AFGE reiterated our stance.

4. **Legally binding contracts:** For years, AFGE has prepared our locals to protect members in the event a future president tried to politicize the federal workforce. Our council and local leaders have put in place several safeguards against the politicization of the workforce and the work our members do in negotiated, legally-binding contracts. The AFGE EPA Council 238, for example, **signed (https://afge238.org/news/press-release-afge-council-238-reaches-new-contract-with-the-epa/)** a contract last year with a provision protecting scientific integrity.

5. **Grievances:** We're working with councils and locals in drafting local and national grievances against actions that violated our contracts.

6. **Fighting back:** AFGE's councils and locals have been working hard to protect members from illegal efforts to shut down their agencies and cut staff. Trump's attacks are unprecedented, but we are not taking it lying down. The AFGE council representing Social Security Administration (SSA) employees, for example, was largely successful in shielding the workers from Trump's

early attacks and is now working to fight Trump's **plan (https://prospect.org/health/social-security-administration-could-cut-half-its-workforce/)** to cut staff by 50%.

7. **Schedule F:** We filed a **lawsuit (/publication/public-service-unions-file-lawsuit-challenging-trump-administration-efforts-to-politicize-the-civil-service/)** against the administration for its efforts to politicize the civil service through Schedule F, now renamed Schedule Career/Policy.

8. **DOGE:** We filed a **lawsuit (/publication/advocacy-group-unions-sue-treasury-department-over-illegal-doge-data-access/)** against the administration for sharing confidential data with the so-called Department of Government Efficiency (DOGE) run by Elon Musk. As a result, a judge partially **blocked (/article/judge-partially-blocks-doge-data-access-in-response-to-lawsuit-by-afge-allies/)** DOGE's access to the Treasury Department's payment systems.

9. **DOGE:** We filed a **lawsuit (/article/afge-allies-file-suit-against-trump-omb-over-doge/)** against the administration for violating a law requiring that an advisory committee such as the Department of Government Efficiency (DOGE) be fairly balanced in its membership and points of view.

10. **DOGE:** We filed a **lawsuit (https://www.asppa-net.org/news/2025/2/doge-puts-dol-in-its-sights-labor-groups-push-back/)** against the administration for violating the Privacy Act and Administrative Procedures Act when DOGE tried to access sensitive data at the Department of Labor and dismantle and restructure federal agencies unilaterally. A judge Feb. 27 **ordered (https://www.nbcnews.com/politics/doge/judge-orders-doge-employee-testify-trump-administration-rcna194145)** DOGE to testify.

11. **Fork directive:** We filed a **lawsuit (/publication/trump-administration-fork-directive-ultimatum-unlawful-as-written-unions-urge-court-to-find/)** against the administration for removing career public service workers and replacing them with partisan loyalists through the Fork Directive. A judge **paused (/article/judge-blocks-implementation-of-fork-directive-as-requested-by-afge-allies/)** the deadline for the deferred resignation program as a result. Even though the judge eventually refused to further pause the deadline, we were able to delay the deadline to allow members to make a decision. The case is still ongoing as the judge did not rule on the underlying lawfulness of the program but procedural grounds, arguing the union had no direct stake.

12. **Executive Action toolkit:** AFGE released a **toolkit (/take-action/campaigns/we-are-afge-strong/executive-action-toolkit/)** for members and locals to use in response to Trump's anti-worker executive orders. The toolkit includes guidance and templates and will be updated regularly.

13. **Online clearing house:** AFGE and allies have launched an online clearing house to share best practices and provide assistance to federal workers in understanding and exercising their rights. **Civil Service Strong (https://www.civilservicestrong.org/)** provides information about employee rights, legal representation, whistleblowing, and more. It explains the process to file a discrimination complaint through the Equal Employment Opportunity Commission and the role of the Merit Systems Protection Board in protecting the civil service from political interference and upholding merit principles. The resource center will soon launch a centralized

hub for individuals facing harassment by private individuals, or fearing firing, reassignment, or retaliation.

14. **Town halls:** We held and participated in internal and external national, local, council, and district town halls with AFGE members, supporters, and elected officials discussing how AFGE is fighting and sharing best practices on how others can support our fight.

15. **Public responses:** AFGE continues to educate the public about the impact of these anti-worker policies on federal employees and the American people who rely on them to provide the services they have paid for and deserve. AFGE leaders have been giving interviews to the media and have been quoted extensively on the danger of these policies.

16. **Legislative efforts and rallies:** AFGE has been educating members of Congress on the real-world impact of Trump's anti-worker directives on federal workers and the American people they serve in the hopes that they will work to nullify them through legislation. After Election Day, we began tracking statements and policy positions related to the federal workforce issued by President-elect Trump, congressional leaders, and think tanks supporting the incoming administration and gaming out the potential scope and impact of changes that the Trump administration and the 119th Congress could seek to make to the federal workforce. We expect the next 18 months to pose the gravest threat to the nonpartisan, merit-based civil service system since the system was established in 1883 and revised in the 1978 Civil Service Reform Act. We have also been working closely with our allies on Capitol Hill, in both the Republican and Democratic parties, to protect federal workers' jobs, pay, and benefits.

**Join us and fight back!**

**Joining AFGE (https://join.afge.org/)** is easy. It takes only a few minutes!

## Recent AFGE News:

### *AFGE Will Challenge Trump's Illegal Directive Outlawing Federal Unions (/link/2b5e1ab4282142278520fa5a20eef88f.aspx)*

*March 31, 2025*



(/link/2b5e1ab4282142278520fa5a20eef88f.aspx)

AFGE will challenge the Trump administration for illegally attempting to strip over one million federal workers of collective bargaining rights and rip up union contracts.

**Read More (/link/2b5e1ab4282142278520fa5a20eef88f.aspx)**

---

### *Chaos and Corruption Weekly Digest: Week 10 (/link/638f6319f5e5459aa2b411b5f4b5e3bc.aspx)*

March 31, 2025



(/link/638f6319f5e5459aa2b411b5f4b5e3bc.aspx)

Week 10 saw Trump's biggest attack on the labor movement in history: his illegal attempt to outlaw federal unions and end union contracts.

**Read More (/link/638f6319f5e5459aa2b411b5f4b5e3bc.aspx)**

---

### *GOP Lawmakers Push Through Legislation That Would Let Trump Abolish Any Agency without Congressional Oversight (/link/46a4f41a0f1e459ba6328171a7fd328b.aspx)*

*March 31, 2025*



(/link/46a4f41a0f1e459ba6328171a7fd328b.aspx)

President Trump has many willing partners in Congress, and it was evident on March 25 when Republican members of the House Oversight and Government Reform Committee marked up four anti-federal worker bills.

**Read More (/link/46a4f41a0f1e459ba6328171a7fd328b.aspx)**