**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| UNITED STATES DEPARTMENT OF DEFENSE, et al., | ) ) ) |
| *Plaintiffs,* | ) ) No. 6:25-CV-00119-ADA |
| v. | ) ) |
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, DISTRICT 10, et al., | ) ) ) ) |
| *Defendants.* | ) ) ) |

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 2

I.    The FSLMRS Framework and Related Executive Orders ............................... 2

II.   Factual Allegations and Procedural History ................................................... 4

STANDARDS OF REVIEW ........................................................................................ 5

ARGUMENT ............................................................................................................. 6

I.    Plaintiffs Have Sufficiently Alleged Standing ............................................... 6

II.   The Court Should Not Dismiss the Claims Against AFGE District 10 or the Councils ....... 11

III.  Venue Properly Lies in This District ............................................................ 15

IV.   A Declaratory Judgment is Appropriate ....................................................... 17

CONCLUSION ......................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Ambraco, Inc. v. Bossclip B.V.*,
  570 F.3d 233 (5th Cir. 2009) ................................................................ 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................ 6

*Barilla v. City of Houston*,
  13 F.4th 427 (5th Cir. 2021) ............................................................... 6

*Biden v. Nebraska*,
  600 U.S. 477 (2023) ............................................................................ 6

*Brillhart v. Excess Ins. Co. of Am.*,
  316 U.S. 491 (1942) .......................................................................... 19

*Building & Construction Trades Department, AFL-CIO v. Allbaugh*,
  295 F.3d 28 (D.C. Cir. 2002) ............................................................. 2

*Bureau of Alcohol, Tobacco & Firearms v. FLRA*,
  464 U.S. 89 (1983) .............................................................................. 3

*Burger King v. Rudzewicz*,
  471 U.S. 462 (1985) .......................................................................... 15

*Canal Ins. Co. v. XMEX Transport, LLC*,
  1 F. Supp. 3d 516 (W.D. Tex. 2014) ...................................... 18, 19, 20

*Carmona v. Leo Ship Mgmt., Inc.*,
  924 F.3d 190 (5th Cir. 2019) ............................................................. 12

*Cornerstone Christian Schs. v. Univ. Interscholastic League*,
  563 F.3d 127 (5th Cir. 2009) ............................................................... 6

*Dallas Texans Soccer Club v. Major League Soccer Players Union*,
  247 F. Supp. 3d 784 (E.D. Tex. 2017) ........................................ 14, 15

*Ellis v. Great Sw. Corp.*,
  646 F.2d 1099 (5th Cir. 1981) ........................................................... 17

*Fed. Elec. Comm'n v. Cruz*,
  142 S. Ct. 1638 (2022) ......................................................................... 5

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021) .......................................................................... 12

*Frye v. Anadarko Petroleum Corp.*,
    953 F.3d 285 (5th Cir. 2019) ............................................................................. 7

*Gault v. Yamunaji, L.L.C.*,
    No. 09-cv-078, 2009 WL 10699952 (W.D. Tex. Apr. 17, 2009) ............................ 6

*In re Chamber of Com. of U.S.A.*,
    105 F.4th 297 (5th Cir. 2024) ........................................................................... 16

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ......................................................................................... 12

*Lane v. Halliburton*,
    529 F.3d 548 (5th Cir. 2008) ............................................................................. 6

*Latshaw v. Johnston*,
    167 F.3d 208 (5th Cir.1999) ............................................................................. 12

*Lawson v. U.S. Dep't of Just.*,
    527 F. Supp. 3d 894 (N.D. Tex. 2021) ................................................................ 6

*Local 1498, AFGE v. AFGE, AFL/CIO*,
    522 F.2d 486 (3d Cir. 1975) ............................................................................... 3

*Manhattan-Bronx Postal Union v. Gronouski*,
    350 F.2d 451 (D.C. Cir. 1965) ........................................................................ 2, 3

*McClintock v. Sch. Bd. E. Feliciana Parish*,
    299 F. App'x. 363 (5th Cir. 2008) .................................................................... 16

*McFadin v. Gerber*,
    587 F.3d 753 (5th Cir. 2009) ........................................................................... 14

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ...................................................................................... 7, 17

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*,
    571 U.S. 191 (2014) ........................................................................................ 7, 9

*Monkton Ins. Servs., Ltd. v. Ritter*,
    768 F.3d 429 (5th Cir. 2014) ............................................................................. 6

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ......................................................................................... 6

*Myers v. United States*,
    272 U.S. 52 (1926) ........................................................................................... 2

*Orix Credit All. v. Wolfe*,
    212 F.3d 891 (5th Cir. 2000) ..................................................................... 18

*Pace v. Cirrus Design Corp.*,
    93 F.4th 879 (5th Cir. 2024) ..................................................................... 12

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
    253 F.3d 865 (5th Cir. 2001) ............................................................... 12, 13

*Paterson v. Weinberger*,
    644 F.2d 521 (5th Cir. 1981) ....................................................................... 5

*Plains Com. Bank v. Long Fam. Land & Cattle Co.*,
    554 U.S. 316 (2008) ..................................................................................... 9

*Revell v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) ..................................................................... 12

*Roach v. Bloom*,
    No. 3:08-cv-439, 2009 WL 667218 (N.D. Tex. Mar. 16, 2009) .................... 6

*Rogers v. Am. Fed. Gov't. Emps., AFL-CIO, AFGE Dist. 5*,
    777 F. App'x 459 (Mem.) ........................................................................... 11

*Sangha v. Navig8 Shipmanagement Private Ltd.*,
    882 F.3d 96 (5th Cir. 2018) ....................................................................... 12

*Seiferth v. Helicopteros Atuneros*,
    472 F.3d 266 (5th Cir. 2006) ..................................................................... 14

*Sherwin-Williams Co. v. Holmes Cnty.*,
    343 F.3d 383 (5th Cir. 2003) ............................................................... 18, 19

*Singleton v. Wulff*,
    428 U.S. 106 (1976) ................................................................................... 10

*St. Paul Ins. Co. v. Trejo*,
    39 F.3d 585 (5th Cir. 1994) ................................................................. 18, 19

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ..................................................................................... 10

*Texas v. Travis Cnty.*,
    272 F. Supp. 3d 973 (W.D. Tex. 2017) ...................................................... 10

*Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*,
    996 F.2d 774 (5th Cir. 1993) ..................................................................... 17

*U.S. Army Corps of Eng'rs Memphis Dist.*,
    53 F.L.R.A. 79 (June 27, 1997) ........................................................................ 8

*U.S. Dep't of the Army Lexington-Blue Grass Army Depot*,
    38 F.L.R.A. 647 (Nov. 30, 1990) ..................................................................... 8

*U.S. Dep't of Veterans Affs.*,
    71 F.L.R.A. 1113 (Nov. 16, 2020) ................................................................... 8

*Union Pac. R.R. Co. v. City of Palestine*,
    41 F.4th 696 (5th Cir. 2022) ....................................................................... 8, 9

*Vantage Trailers, Inc. v. Beall Corp.*,
    567 F.3d 745 (5th Cir. 2009) ......................................................................... 7

*Villas at Parkside Partners v. City of Farmers Branch*,
    577 F. Supp. 2d 880 (N.D. Tex. 2008) ........................................................... 10

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ................................................................................ 17, 19

*Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*,
    982 F. Supp. 2d 714 (W.D. Tex. 2013) ........................................................... 16

**Statutes**

5 U.S.C. § 5596 ..................................................................................... 8, 14

5 U.S.C. § 7101 ......................................................................................... 3

5 U.S.C. § 7103 ................................................................................. 1, 3, 10

5 U.S.C. § 7118 ......................................................................................... 8

5 U.S.C. § 7311 ....................................................................................... 10

28 U.S.C. 1391 .................................................................................... 15, 16

28 U.S.C. § 1406 ..................................................................................... 17

28 U.S.C. § 2201 ..................................................................................... 17

Pub. L. No. 95-454, 92 Stat. 111 (1978) ............................................................ 3

**Rules**

Fed. R. Civ. P. 9(a)(2) ............................................................................... 11

**The Constitution**

U.S. Const., art. II, § 1, cl. 1 ............................................................................................. 2

**Executive Orders**

Exec. Order No. 12,171, 44 Fed. Reg. 66,565 (Nov. 20, 1979) ...................................... 3

Exec. Order No. 13,480, 73 Fed. Reg. 73,991 (Dec. 4, 2008)........................................ 4

Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025)...................................... 4

# INTRODUCTION

Since taking office, two of President Trump's top priorities for his Administration have been to improve the efficiency and efficacy of the federal workforce and to promote the national security of the United States. Many Executive Branch departments and agencies have been hamstrung in advancing those priorities due to restrictive terms of national collective bargaining agreements and local supplemental agreements or memoranda of understanding (collectively, CBAs). Many of those CBAs were negotiated or amended in the waning days of the prior Administration for the apparent purpose of tying the new President's hands with effective dates that extended beyond the end of former President Biden's term and, even, beyond the end of President Trump's term in four years. Indeed, the terms of many of those CBAs were designed to preclude President Trump from adopting policies he had announced intentions to implement or had deemed to be in the best interest of the Nation during his first term.

The Federal Service Labor Management Relations Statute (FSLMRS), which governs bargaining with public-sector labor unions, authorizes the President to exempt from its coverage "any agency or subdivision thereof" if the President determines that "the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work," and that the provisions of the statute "cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations." 5 U.S.C. § 7103(b)(1). In Executive Order 14,251, *Exclusions from Federal Labor Management Relations Program*, the President made the determinations specified in the FSLMRS to exclude several agencies and agency subdivisions from its coverage, including the Plaintiff agencies. Plaintiff agencies now seek declaratory relief from this Court to confirm Plaintiffs' rights under the Executive Order and to protect against harms arising from the uncertain status of their CBAs with Defendants, which represent thousands of federal employees in Western Texas and have principal responsibility in

this region for implementing and enforcing those CBAs against Plaintiffs.

Defendants have moved to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, based on standing; pursuant to Rule 12(b)(2) with respect to five of the thirty-seven Defendants, based on personal jurisdiction; pursuant to Rule 12(b)(3) for improper venue; and pursuant to Rule 12(b)(6) for just one Defendant—American Federation of Government Employees, AFL-CIO, District 10 (District 10)—positing that District 10 is not an entity that can be sued. Defendants also assert that the Court in its discretion should decline to consider Plaintiffs' declaratory judgment claim. None of these asserted bases for dismissal has merit. Indeed, the Complaint here withstands dismissal for at least five reasons. First, Plaintiffs have sufficiently alleged a concrete injury to establish standing. Second, the Court has personal jurisdiction over all Defendants. Third, venue properly lies in this district. Fourth, the claims against District 10 are proper. And fifth, a declaratory judgment here is appropriate. Defendants' motion should therefore be denied in its entirety.

## BACKGROUND

### I.    The FSLMRS Framework and Related Executive Orders

Article II of the Constitution provides that "[t]he executive Power shall be vested in a President of the United States of America." U.S. Const., art. II, § 1, cl. 1. This power "necessarily encompasses 'general administrative control of those executing the laws,' throughout the Executive Branch of government," *Building & Construction Trades Department, AFL-CIO v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002) (quoting *Myers v. United States*, 272 U.S. 52, 164 (1926)), and includes the authority to make "improvement[s] in the efficiency of federal employment." *Manhattan-Bronx Postal Union v. Gronouski*, 350 F.2d 451, 456 (D.C. Cir. 1965). Before Congress enacted the FSLMRS in 1978, the President routinely "regulate[d] labor relations in the federal government and internal matters of unions representing federal government

employees[]" by Executive Order.  *See, e.g.*, *Local 1498, AFGE v. AFGE, AFL/CIO*, 522 F.2d 486, 491 (3d Cir. 1975).  "This was a project of the Executive, and not of the Congress." *Manhattan-Bronx Postal Union*, 350 F.2d at 452.

Against this backdrop, Congress in 1978 passed the FSLMRS, 5 U.S.C. § 7101 *et seq*.  The statute, enacted as Title VII of the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 111, provides a "comprehensive . . . scheme governing labor relations between federal agencies and their employees." *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 91 (1983). The FSLMRS establishes the right of certain federal employees to form or join a labor union, among other protections.  But the FSLMRS exempts certain agencies and matters from its coverage.  5 U.S.C. § 7103(a)(3) (excluding from coverage the Federal Bureau of Investigation, the Central Intelligence Agency, and the Tennessee Valley Authority, among others).  The FSLMRS also empowers the President to exempt additional agencies from its requirements: It provides that "[t]he President may issue an order excluding *any* agency or subdivision thereof from coverage under [the FSLMRS] if the President determines that—(A) the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work, and (B) the provisions of [the FSLMRS] cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations." *Id.* § 7103(b)(1) (emphasis added).

Pursuant to this authority, President Carter issued an executive order in 1979 excluding from FSLMRS coverage more than forty-five agencies or agency subdivisions—including the General Services Administration's Information Security Oversight Office, the Federal Research Division within the Library of Congress, and several components of the Department of Treasury— precluding their employees from collective bargaining.  Exec. Order No. 12,171, 44 Fed. Reg. 66,565 (Nov. 20, 1979).  Every President since then, with the sole exception of President Biden,

3

has issued similar executive orders adding to that list in response to changing circumstances and the evolving investigative and national security responsibilities of federal agencies.  *See, e.g.*, Exec. Order No. 13,480, 73 Fed. Reg. 73,991 (Dec. 4, 2008).

Following that long tradition, on March 27, 2025, President Trump issued another such Executive Order.  *See* Exec. Order No. 14,251, 90 Fed. Reg. 14,553.  In Section 2 of the order, the President determined that certain agencies and subdivisions—including Plaintiffs and/or their components—have as a primary function intelligence, counterintelligence, investigative, or national security work, and that the FSLMRS cannot be applied to those agencies and subdivisions in a manner consistent with national security requirements and considerations.

## II.    Factual Allegations and Procedural History

Plaintiffs are eight federal agencies that are covered by Executive Order 14,251 and that have operations within this district.  Plaintiff agencies and/or their components have previously executed with Defendants, or other local unions under the auspices of Defendants, one or more CBAs that remain currently in effect.[1]  Compl. ¶¶ 15, 77, ECF No. 1.  Defendants are the American Federation of Government Employees (AFGE) District 10 and various of its local unions.  *Id.* ¶ 10. AFGE District 10, is an arm of AFGE National[2] that "represents over 90,000 workers" in Louisiana, Mississippi, Panama, New Mexico, and Texas, and is headquartered in Killeen, Texas.

---

[1] On April 25, 2025, the U.S. District Court for the District of Columbia issued a preliminary injunction in *National Treasury Employees Union v. Trump* ("*NTEU v. Trump*").  That injunction precludes the defendants in that case, including the Secretary of the Environmental Protection Agency (EPA), one of the Plaintiff agencies here, from implementing Section 2 of the Executive Order.  *See* Order, *NTEU v. Trump*, No. 25-cv-935 (D.D.C. Apr. 25, 2025), ECF No. 32.  The *NTEU v. Trump* defendants appealed the injunction to the D.C. Circuit and have filed in the court of appeals an emergency motion for an immediate administrative stay and stay pending appeal, which is pending as of the date of this filing, *NTEU v. Trump*, No. 25-5157 (D.C. Cir. Apr. 30, 2025).

[2] AFGE National "is structured into 12 geographic districts," including District 10.  *See* AFGE Local Officers Resource Guide 9 ("AFGE Resource Guide"), https://perma.cc/GJ2D-LXYS. "Each District has a National Vice President . . . and staff" and is "responsible for carrying out the goals and programs of AFGE" within the District's geographical area.  *Id.*

*Id.* ¶ 24; District 10, https://www.afge.org/districts/district10/ (last visited May 4, 2025).  Thirty-one Defendants are local union affiliates of AFGE who represent employees located in Texas.  *Id.* ¶¶ 25–32, 34–38, 40, 42, 44–50, 52–60.  The remaining five Defendants are Councils[3] affiliated with AFGE who represent employees in Texas and perform union-related activities in Texas.  *Id.* ¶¶ 33, 39, 41, 43, 51.

As alleged in the complaint, the obligations imposed by the CBAs disrupt Plaintiffs' ability to manage their workforces and pursue their national-security missions by stalling the implementation of changes that the President has deemed necessary for employees of the Plaintiff agencies with national-security missions within this district.  *See generally id.* ¶¶ 11, 15, 85–166.  Pursuant to the President's directive, Plaintiffs wish to rescind or repudiate those CBAs, including so they can protect national security by developing personnel policies that otherwise would be precluded or hindered by the CBAs.  *Id.* ¶ 11.  But to ensure legal certainty and avoid wasting taxpayer dollars and risking other attendant harms by first terminating their CBAs and then defending those actions, Plaintiffs seek declaratory relief here.  *See id.*

Defendants moved to dismiss on April 21, 2025.  Defs.' Mot. to Dismiss, ECF No. 41 ("Mot.").  Plaintiffs now oppose that motion in its entirety.

## STANDARDS OF REVIEW

When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), the Court need only "look to the sufficiency of the allegations in the complaint because they are presumed to be true."  *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  "For standing purposes, [the Court must] accept as valid the merits of [Plaintiffs'] legal claims."  *Fed. Elec. Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022).  Similarly, under Rule 12(b)(2), the Court must "accept the

---

[3] AFGE's "Bargaining Councils," including Defendant Councils here, "represent member locals at the agency level of the labor and management relationship" and "lobby for [their] locals' issues." *See* AFGE Resource Guide at 9.

plaintiff's uncontroverted allegations, and resolve in [Plaintiffs'] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (citation omitted). A Rule 12(b)(3) challenge for improper venue likewise "requires [the court] to view all the facts in a light most favorable to the plaintiff," *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009) (internal quotation omitted); the Court may look beyond the complaint and "may find a plausible set of facts" by considering other evidence, which should be viewed in the light most favorable to the plaintiff. *See id.* at 238 (quoting *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008)).[4] To defeat a motion to dismiss under Rule 12(b)(6), a complaint need only include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

## ARGUMENT

### I.    Plaintiffs Have Sufficiently Alleged Standing

Standing requires a plaintiff to demonstrate an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). To withstand dismissal, a plaintiff need only "allege facts that give rise to a plausible claim of standing." *Barilla v. City of Houston*, 13 F.4th 427, 431 (5th Cir. 2021) (quoting *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133 (5th Cir. 2009)). "If at least one plaintiff has standing, the suit may proceed." *Biden v. Nebraska*, 600 U.S. 477, 489 (2023).

---

[4] Defendants cite *Gault v. Yamunaji, L.L.C.* for the proposition that the "plaintiff has the burden to prove that venue is proper." Mot. 12 (quoting *Gault v. Yamunaji, L.L.C.*, No. 09-cv-078, 2009 WL 10699952, at *2 (W.D. Tex. Apr. 17, 2009)), but "[t]here is a split of authority among federal courts and in the Fifth Circuit with regard to which party bears the burden of establishing venue on a Rule 12(b)(3) motion to dismiss for improper venue." *Lawson v. U.S. Dep't of Just.*, 527 F. Supp. 3d 894, 896 (N.D. Tex. 2021); *see also Roach v. Bloom*, No. 3:08-cv-439, 2009 WL 667218, at *2 (N.D. Tex. Mar. 16, 2009) ("[T]he better rule is one that places the burden on the movant.").

When evaluating injury in the context of a declaratory judgment action, the court considers "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation omitted). Declaratory judgment plaintiffs "need not actually expose themselves to liability before bringing suit." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009); *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 295 (5th Cir. 2019). The court may look to "the nature of the threatened action in the absence of the declaratory judgment suit." *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014).

Here, an actual controversy has arisen and exists between the parties concerning the rights and obligations of the Plaintiffs under the terms of the extant CBAs in light of Executive Order 14,251. *See* Compl.; *see also* Compl., *Am. Fed'n of Gov't Emps. v. Trump*, No. 3:25-cv-3070 (N.D. Cal. Apr. 3, 2025), ECF No. 1 (AFGE complaint asking court to enjoin Executive Order 14,251 and affirm validity of CBAs). Pursuant to the CBAs, Plaintiff agencies must provide prolonged performance improvement periods for underperforming employees in this district before proposing termination or removal in contravention of Administration priorities; must employ heightened burdens of proof for misconduct-based removals in this district; must permit employees in this district to perform union business during official duty hours payable by taxpayer-funded salaries and wages; suffer often lengthy midterm bargaining delays before they can substantively modify working conditions; submit to third-party arbitration of most workplaces disputes; and incur various other pecuniary, logistical, and procedural burdens on operations—all to the detriment of national security. *See* Compl. ¶ 170. Plaintiffs believe they can terminate the CBAs pursuant to Executive Order 14,251, but Defendants disagree and have sued the Administration over this very Executive Order. Were Plaintiffs to terminate the CBAs and take

their desired personnel actions without respect to contractual requirements, but the Federal Labor Relations Authority (FLRA) or a court later held the CBAs remained valid, the Federal Government could be liable for many millions of dollars in backpay.  *See* 5 U.S.C. § 7118(a)(7) (providing that if the FLRA determines that a federal agency engaged in a ULP, then the FLRA must issue cease-and-desist order and can require an employee's reinstatement with backpay in accordance with 5 U.S.C. § 5596); *id.* § 7123 (providing for judicial review—by an appropriate United States court of appeals—of FLRA decisions).

Plaintiffs' inability to manage their workforces as they wish without facing substantial legal uncertainty—and its attendant costs—constitutes a cognizable injury to Plaintiffs.  *See Union Pac. R.R. Co. v. City of Palestine*, 41 F.4th 696, 708 (5th Cir. 2022) ("[T]he purpose of the Declaratory Judgment Act . . . is to provide a means to grant litigants judicial relief from legal uncertainty in situations so that they would no longer be put to the Hobson's choice of foregoing their rights or acting at their peril." (cleaned up)).  If Plaintiffs proceeded with the intended terminations of their CBAs only to have those actions declared unlawful by the FLRA or a court, that could cost Plaintiffs time and money given the process for reinstating CBAs and potential backpay and attorney fee awards.  *See, e.g.*, *U.S. Dep't of Veterans Affs.*, 71 F.L.R.A. 1113 (Nov. 16, 2020) (requiring agency to offer reinstatement and backpay to union employees terminated without regard to contractually-required performance improvement periods).  For example, the FLRA could order status quo ante (SQA) relief that would require Plaintiff agencies to rescind their actions, return to the prior status quo, give notice to the unions, and then engage in further bargaining.  *See, e.g.*, *U.S. Dep't of the Army Lexington-Blue Grass Army Depot*, 38 F.L.R.A. 647, 649 (Nov. 30, 1990) (ordering SQA relief to undo and re-do a reduction-in-force); *U.S. Army Corps of Eng'rs Memphis Dist.*, 53 F.L.R.A. 79, 86 (June 27, 1997) (ordering SQA relief and reinstatement of a position).  Plaintiffs should not have to make the "Hobson's choice" of acting

at their peril in order to clarify their rights under the law. *See Union Pac.*, 41 F.4th at 708.

Moreover, Plaintiffs are injured by Defendants' union activity within this district, as Defendants are responsible for enforcing the CBAs against Plaintiffs. These injuries can be remedied by a ruling in favor of Plaintiffs that the CBAs are null and void in light of Executive Order 14,251 because such a ruling would preclude Defendants from enforcing the CBAs. *See, e.g.*, *Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 327 (2008) (holding that because the challenged tribal judgment caused plaintiff injury, plaintiff had standing to seek a declaration that the tribal judgment was null and void). Defendants proffer only unsubstantiated assertions that the CBAs themselves and their "contractual restrictions" do not cause "imminent injur[y]." Mot. 7. But the CBAs impose monetary injuries, for example, by requiring Plaintiffs to pay employees for time spent on union activities. And the CBAs currently restrict Plaintiffs from implementing this Administration's workforce policies. Indeed, many of the CBAs were designed to have that effect, as they were renegotiated in the waning months of the prior Administration to govern throughout President Trump's term. *See, e.g.*, Compl. ¶¶ 2, 3, 80, 112.

At the time the Complaint was filed, Plaintiffs additionally faced imminent and foreseeable "coercive action" by Defendants as enforcers of the CBAs in this district. *See Medtronic*, 571 U.S. at 197. Although those coercive actions properly should have been brought as ULP charges before the FLRA, Defendants' parent union improperly raced into a federal district court mere days after the Complaint here was filed. *See* Compl., *AFGE v. Trump*, No. 3:25-cv-3070 (N.D. Cal. Apr. 3, 2025), ECF No. 1 (seeking both a declaration and an injunction prohibiting federal agencies— including several Plaintiffs in this case—from complying with Executive Order 14,251).[5] Thus,

---

[5] The agency defendants in *AFGE v. Trump*, which again include several of the Plaintiffs here, assert that the FSLMRS precludes district court jurisdiction over the plaintiffs' claims in that case. *See* Defs.' Opp'n to Pls.' *Ex Parte* Mot. for Prelim. Inj., *AFGE v. Trump*, No. 3:25-cv-3070 (N.D. Cal. Apr. 25, 2025), ECF No. 44.

the "relationship between the parties is classically adverse, and there clearly exists between them a case or controversy in the constitutional sense." *Singleton v. Wulff*, 428 U.S. 106, 113 (1976).

Because Defendants mischaracterize the injuries that Plaintiffs have alleged as based on "citizens disagree[ing] with government action," *cf.* Mot. 6, or a potential employee strike, their dismissal arguments rely on inapposite cases.[6] *See* Mot. 9–10 (citing *Texas v. Travis Cnty.*, 272 F. Supp. 3d 973 (W.D. Tex. 2017) and *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 880, 884–85 (N.D. Tex. 2008)). *Travis County* and *Villas at Parkside* turned on the non-imminent nature of the asserted injuries. In both cases, the law involved was not even in effect. *Travis Cnty.*, 272 F. Supp. 3d at 979–80; *Farmers Branch*, 577 F.Supp.2d at 884–85. Here, the injuries posed by the CBAs and their conflict with Executive Order 14,251 actually existed at the time the Complaint was filed.

For these same reasons, Plaintiffs are not seeking an "advisory opinion" requiring the court to opine on a "hypothetical" set of facts. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). The allegations here are real and concrete, not hypothetical. The President has already exercised his authority under 5 U.S.C. § 7103(b)(1) in issuing Executive Order 14,251. While Plaintiffs have taken some actions to comply with the Executive Order (but not all they wish to take), the Court is asked to resolve the uncertainty over their lawfulness and thereby relieve Plaintiffs from unnecessary expenditures of taxpayer dollars and the harms to national security from their refraining to take other actions to implement the Executive Order. The Court

---

[6] Defendants illogically and erroneously construe the term "labor strife" as used in the Complaint as referring to labor strikes. Mot. 6–7. As Defendants themselves acknowledge, however (*id.* at 7), the FSLMRS prohibits federal employees from striking. 5 U.S.C. § 7311. The Complaint explains that Plaintiffs seek a declaratory judgment here to "ensure legal certainty and avoid unnecessary labor strife[.]" Compl. ¶ 11. Labor strife, as used there, refers to the extensive procedures—grievances and ULPs, with potential concomitant backpay judgments—used to resolve disagreements between unions and agencies under the labor laws. Disagreement with labor organizations like Defendants was foreseeable and imminent, as evidenced by AFGE's lawsuit in the Northern District of California.

accordingly should deny Defendants' Rule 12(b)(1) motion.

## II.    The Court Should Not Dismiss the Claims Against AFGE District 10 or the Councils

Although Defendants do not dispute this Court's jurisdiction over the thirty-two local Defendants, they contend that District 10 is not a legal entity susceptible to suit and that this Court lacks personal jurisdiction over the five Councils not headquartered in Texas.  Mot. 20; *see also id.* at 12–14.  Neither contention has merit.

In one sentence at the end of their brief, Defendants assert without explanation or argument that claims against District 10 should be dismissed pursuant to Rule 12(b)(6) because it is "not an entity that can be sued, nor is it a party to any CBA with Plaintiffs."  Mot. 20.  This contention is easily dispensed with here.  District 10 is a legal entity susceptible to suit, like other AFGE Districts have been.  *See e.g., Rogers v. Am. Fed. Gov't. Emps., AFL-CIO, AFGE Dist. 5*, 777 F. App'x 459 (Mem.) (11th Cir. 2019) (affirming grant of District 5's summary judgment motion). Even if District 10 is not "a party to any CBA with Plaintiffs" as Defendants contend, *see* Mot. 20, it is responsible for assisting in negotiating and implementing contracts in this district, and for CBA enforcement here—including handling grievances and appeals at the district level up to and including the regional level.  *See* AFGE Resource Guide at 9, 10; District 10, https://www.afge.org/districts/district10/.  In any event, in order to raise the issue of its capacity to be sued, District 10 must provide "a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge," Fed. R. Civ. P. 9(a)(2), which the single sentence in Defendants' motion fails to do.[7]  The Court should deny District 10's Rule 12(b)(6) argument.[8]

---

[7] Even if District 10 is not a separate legal entity, it is an arm of AFGE National, which is undoubtedly susceptible to suit, including in this judicial district.  Plaintiffs' requested relief is specific to District 10, but if this Court finds District 10 is not subject to suit, it should treat District 10 as part of AFGE National, as defendants assert it is.

[8] District 10, and no other defendant, moves to dismiss pursuant to Rule 12(b)(6).  Mot. 20.

Defendants' arguments that personal jurisdiction is lacking as to the Councils and that the claims against them should be dismissed pursuant to Rule 12(b)(2) also lack merit.  Personal jurisdiction is proper where the nonresident defendant "purposefully availed [itself] of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "Sufficient minimum contacts will give rise to either specific or general jurisdiction."  *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002).  Defendants refer to the Councils as "out-of-state" because they are headquartered outside of Texas and "represent employees throughout the country," including in Texas.  Mot. 12–13.  The location of the Council headquarters, however, is immaterial.  Because the Councils have sufficient minimum contacts with this district and Plaintiffs' claim arises out of those contacts, this Court can exercise specific jurisdiction over the Councils.

A court has specific jurisdiction when three conditions are met: (1) the defendant purposefully avails itself of the privileges of conducting activities in the state; (2) the plaintiff's claims arise out of or relate to the defendant's purposeful contacts; and (3) maintaining the suit would not offend traditional notions of fair play and substantial justice.  *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 900 (5th Cir. 2024) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–60 (2021).  At this stage, Plaintiffs bear "the burden of establishing only a *prima facie* case of personal jurisdiction."  *Carmona v. Leo Ship Mgmt., Inc.,* 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018)).  In determining whether Plaintiffs have met this burden, the Court should accept Plaintiffs' factual allegations as true and resolve all factual controversies in Plaintiffs' favor.  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (per curiam).

Plaintiffs have met their burden as to the Councils.  These Defendants have purposefully availed themselves of the privilege of conducting business in Texas through their relationships with the relevant local chapters and their efforts to implement the CBAs:

➢ The **National Joint Council of Food Inspection Locals** is "recognized as the exclusive representative of all permanent full-time inspectors," including bargaining unit employees in Texas and in this district.  *See* USDA Food Safety and Inspection Service, *Employee Bargaining*, https://www.fsis.usda.gov/employees/employee-bargaining.  Additionally, the Council has three union officers located in Amarillo, Lubbock, and Mansfield, Texas.  SWC, *USDA FSIS Inspectors of the AFGE Southwest Council*, https://www.fsisinspectorsunion.com/about.

➢ **Council 238** represents employees in EPA Region 6, and is based in Dallas, Texas.  *See* AFGE, *AFGE Council 238*, https://afge238.org/about/.

➢ **Council 222** Region 6 - Southwest represents HUD employees in Texas from its office in Fort Worth, TX.  *See* AFGE Council 222, *About Us*, https://afgecouncil222.com/aboutus.htm.

➢ The **Council of Prison Locals C-33**, employs eleven members—the Council of Prison Locals Executive Board—who perform union duties on official time including the South Central Regional Vice President, who represents Federal Bureau of Prisons (BOP) employees in Texas and surrounding states.  *See* AFGE, *Our Council*, https://www.afge.org/councils/c033/about-cpl33/our-council/.

➢ The **VA Council** is divided into regional districts and headed by a District Representative, including VA Council District 10, which covers Texas and surrounding states.  *See* AFGE National VA Council, *Representatives*, http://afgenvac.org/district-representatives/.  The President of AFGE Local 1822, who is based in Waco, Texas, also serves as the VA Council representative for District 10, which covers VA employees in Texas, Louisiana, and Mississippi.  He too receives official time to perform district representative duties, which AFGE describes as "making sure the Master Collective Bargaining Agreement[] is followed" within his jurisdiction.  *Id.*

Council-negotiated CBAs authorize the union to pursue employee grievances, advance those grievances to binding arbitration, and perform other representational activities on official government time.  These bargaining councils supervise local chapters' performance of such activities under the CBAs, and as noted above perform activities directly in Texas.

These contacts give rise to the claims at issue.  This lawsuit arises from the implementation of the CBAs by Defendants and the parties' dispute over whether Defendants are entitled to

continue such implementation. Defendants, including the Councils, continue to invoke the procedures in the CBAs and FSLMRS while Plaintiffs seek to end these practices consistent with the President's determination that they are detrimental to national security. Plaintiffs brought this action seeking legal certainty concerning their obligations under the CBAs in light of the Executive Order. This lawsuit therefore arose from Defendants' purposeful efforts to continue enforcing their CBAs in Texas. Thus, Defendants' reliance on *Dallas Texans Soccer Club* is misplaced. *Dallas Texans Soccer Club v. Major League Soccer Players Union*, 247 F. Supp. 3d 784 (E.D. Tex. 2017) (concluding that the event giving rise to the claim was the threat of litigation itself).

Here, Plaintiffs' lawsuit was not based on a specific threat of litigation from any of the named Defendants. Rather, the suit was prompted by Defendants' continued implementation and enforcement of the CBAs. Compl. ¶¶ 76–84. As noted above, the Councils continue to utilize CBA provisions entitling them to office space, official time, and grievance procedures, both directly and through local chapters as their agents. If Plaintiffs take personnel actions inconsistent with these CBAs, the Councils' enforcement actions could impose significant Back Pay Act liability. *See* 5 U.S.C. § 5596. It is these actions, not a threat of litigation over Executive Order 14,251, that underlie Plaintiffs' injuries and thus gave rise to the present controversy. Plaintiffs have therefore made a prima facie case that this Court has jurisdiction over the Councils, and the burden shifts to Defendants. *Seiferth v. Helicopteros Atuneros*, 472 F.3d 266, 271 (5th Cir. 2006).

Defendants cannot meet their burden to show that exercising jurisdiction would be unfair or unreasonable. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) ("It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." (citation omitted)). The Court should consider five factors in making this determination, (1) the burden on the nonresident defendant, (2) the forum state's interests; (3) the plaintiffs' interests in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the

shared interest of the several states in furthering fundamental social policies.  *Dallas Texans*, 247 F. Supp. 3d at 789–90 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  The burden on the Councils in defending this suit is minimal, as their defense of this matter is coordinated with their various constituent local unions.  This district has an important interest in resolving this case given that Plaintiffs' claim concerns labor relations with many Texas employees.  Moreover, as stewards of both national security and the public fisc, Plaintiffs have an important interest in clarifying their legal obligations as they pertain to managing their workforces.  And no other state, or the interstate judicial system, has a countervailing interest.  Based on these factors, the Court's exercise of jurisdiction over the out-of-state Defendants is both fair and reasonable.  Accordingly, the Court should deny Defendants' Rule 12(b)(2) motion.

## III.    Venue Properly Lies in This District

Defendants' venue challenge fails for similar reasons.  Venue in this case is governed by 28 U.S.C. § 1391(b), which provides that venue is proper in either (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located, or (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.  Venue is proper if Plaintiffs satisfy either category; here, Plaintiffs satisfy both.

Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants are residents of Texas and several are residents of this judicial district.  *See* Compl. ¶¶ 24–60.  Defendants contest only the residency of the Councils. As explained already, the Councils are subject to personal jurisdiction in the Western District of Texas and are consequently deemed residents of Texas for purposes of venue.  *See* pp. 12–15, *supra*; *see* 28 U.S.C. 1391(c)(2) (defining residency for a defendant entity as "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question").  Because all Defendants are residents of Texas, venue is proper in this District under § 1391(b)(1).

Independently, venue is also proper under § 1391(b)(2) because "a substantial part of the events giving rise to this claim occurred" in the Western District of Texas. *Id.* As the Fifth Circuit has recognized, "'the chosen venue does not have to be the place where the most relevant events took place,' but only where a 'substantial' part of the events or omissions giving rise to the claims occurred." *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013) (quoting *McClintock v. Sch. Bd. E. Feliciana Parish*, 299 F. App'x. 363, 365 (5th Cir. 2008)). Indeed, the "substantial part of the events or omissions test does not require that the chosen venue be the *best* venue . . . the selected district must simply have a substantial connection to the claim." *Id.* (citation omitted).

Plaintiffs seek a declaration that discontinuing enforcement of Defendants' CBAs, which occurs in significant part in the Western District of Texas, is legal. Defendants' contrary arguments miss this basic point. Plaintiffs' claim is not based on the act of signing the Executive Order or any potential agency-wide recission of the relevant CBAs. *See* Mot. 14. Rather, Plaintiffs' claim seeks to resolve the present controversy: that the Defendants continue to implement and enforce the provisions of the CBAs in this district while Plaintiffs contend the CBAs are no longer valid. At least a "substantial part" of events that gave rise to this claim are Defendants' continued enforcement of the CBAs here. 28 U.S.C. § 1391(b)(2). Defendants' suggestion that venue cannot be proper because only a portion of the unions affected by the Executive Order are based in Texas and most signatories to the national CBAs are not in Texas, Mot. 15, is both incorrect and beside the point. As the masters of their complaint, Plaintiffs have chosen to seek relief only against Defendants, based on injuries they suffer in this state and this district. *See In re Chamber of Com. of U.S.A.*, 105 F.4th 297, 302–03 (5th Cir. 2024) ("a plaintiff is the 'master of the complaint,' and, as the Supreme Court has admonished, '[t]he Court must [] give some weight to the plaintiffs' choice of forum.'"). Because Plaintiffs sued the local unions in Texas based on their specific

responsibilities for enforcing the CBAs in this district, the events that gave rise to Plaintiffs' Complaint primarily occurred in the Western District of Texas, and venue is proper here.

Last, contrary to Defendants' suggestion, Washington, D.C. and California are improper venues for Plaintiffs' claims in this Complaint. The relief Plaintiffs request here is limited to these Defendants, none of which has any relevant connection to California. That Plaintiffs might be able to bring *different* claims in *different* venues is irrelevant to whether *this* claim is proper in *this* venue. Further, because venue is proper in this Court, 28 U.S.C. § 1406(a) does not apply. *See Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1109 (5th Cir. 1981) ("A transfer under § 1406(a) is based not on the inconvenience of the transferor forum but on the impropriety of that forum."). For these reasons, the Court should deny both Defendants' Rule 12(b)(3) motion and Defendants' alternative request to transfer pursuant to 28 U.S.C. § 1406(a).

## IV.    A Declaratory Judgment is Appropriate

The Court should also deny Defendants' request that the Court decline to hear Plaintiffs' declaratory judgment claim. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act serves an important function by allowing parties to seek legal clarity and resolve concrete disputes without taking actions that would expose them to potential liability (for example, by repudiating a contract, infringing a patent, or violating a statute). *See generally MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. at 118 (2007); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 288–90 (1995). Although a district court has discretion over whether to decide a declaratory judgment action, this discretion "is not unfettered" and "[c]ourts may not dismiss requests . . . 'on the basis of whim or personal disinclination.'" *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993) (citations omitted).

The Fifth Circuit has "set forth three inquiries that district courts must make to determine whether to adjudicate a declaratory judgment action: first, whether the case is justiciable; second, whether the court has authority to grant declaratory relief; and third, whether the court should exercise its discretion to decide the action." *Canal Ins. Co. v. XMEX Transport, LLC*, 1 F. Supp. 3d 516, 523 (W.D. Tex. 2014) (citing *Orix Credit All. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)).

First, this case is justiciable because, as discussed above in Section I, an actual controversy exists here. Second, the Court must have the authority to grant a declaratory judgment. While courts generally have authority to grant declaratory judgments in justiciable cases, a court lacks authority to grant relief only where the following three conditions are met: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in the federal court; and (3) the Anti–Injunction Act prohibits the Court from enjoining the state proceedings. *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 388 n.1 (5th Cir. 2003) (citation omitted). Where, as here, there is no pending state court action between the federal declaratory plaintiff and any of the declaratory defendants, none of the above conditions is met. *Id.* As a result, the Court should find it has authority to grant declaratory relief in this case.

As to the third inquiry, the Court should exercise its discretion to decide this action. In *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994), the Fifth Circuit set forth seven nonexclusive factors (the "*Trejo* factors") that district courts "must consider in determining whether to dismiss a declaratory judgment." The *Trejo* factors are:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy;

and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

39 F.3d at 590–91. A year later, the Supreme Court identified similar factors to be used by a district court to determine whether to decline jurisdiction over a declaratory judgment action. *See Wilton*, 515 U.S. at 289 (referencing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). As recognized by the Fifth Circuit, there are three overarching principles expressed by both the *Brillhart* and *Trejo* factors: "federalism, fairness, and efficiency." *Canal Ins. Co.*, 1 F. Supp. 3d at 525, 533 (quoting *Sherwin-Williams Co.*, 343 F.3d at 390–91). The combined *Trejo* and *Brillhart* factors "apply by their own terms to all declaratory judgment actions." *Id.* at 525 (citation omitted). Here, all seven factors support granting the requested declaratory judgment.

To begin, the Court considers whether exercising its discretion to decide the action would impinge on federalism. Essential to this consideration is whether there is "a pending state action in which all of the matters in controversy may be fully litigated[.]" *Trejo*, 39 F.3d at 590. "The absence of any pending related state litigation strengthens the argument against dismissal of the federal declaratory judgment action." *Sherwin-Williams Co.*, 343 F.3d at 394. Here, the lack of any state proceeding "is a factor that weighs strongly against dismissal." *Id.*

Next, the Court considers whether Plaintiffs were engaged in "anticipatory" litigation, "procedural fencing," or a "race to *res judicata.*" *Id.* at 397–99. As the Fifth Circuit has recognized, one "proper purpose of section 2201(a) is to allow potential defendants to resolve a dispute without waiting to be sued or until the statute of limitations expires." *Id.* at 397 (citation omitted). And, indeed, "[t]he mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court." *Id.* Plaintiffs' decision to file this suit was not made in anticipation of litigation by AFGE or other federal unions, but to obtain clarity regarding Plaintiffs' CBAs with Defendants,

19

as soon as practicable. Nor have Plaintiffs engaged in procedural fencing or a race to res judicata. Because Plaintiffs did not have improper motives in filing this suit, the third factor is neutral. *See Canal Ins. Co.*, 1 F. Supp. 3d at 527.

Finally, the Court considers "efficiency," measured by whether retaining the federal declaratory judgment action would serve "judicial economy," and whether the "federal court is a convenient forum for the parties and witnesses." *Id.* at 533. This action serves judicial economy. The FSLMRS and the CBAs do not provide an administrative process for Plaintiffs to seek clarification of their legal rights to implement necessary policy changes. Absent the declaratory relief requested, Plaintiffs' legal rights could be adjudicated only in a piecemeal fashion by defending against ULP claims in the administrative process after Plaintiffs have already repudiated contracts. Plaintiffs seek a narrow remedy: relief with respect to these Defendants responsible for enforcing CBAs against Plaintiffs as to particular employees. Further, no Defendant would be inconvenienced if the Court decides to hear Plaintiffs' declaratory judgment action. All Defendants are either located in Texas or have extensive operations in Texas—and in any event, the dispositive issues in this case are pure questions of law. *See* Section II, *supra*.

Accordingly, based on any weighing of the *Trejo* factors here, Plaintiffs' declaratory judgment claim is properly before the Court.

## CONCLUSION

For these reasons, the Court should deny Defendants' motion to dismiss.

Dated: May 5, 2025                    Respectfully submitted,

                                       YAAKOV M. ROTH
                                       Acting Assistant Attorney General
                                       EMILY M. HALL
                                       SARAH E. WELCH
                                       Counsel to the Assistant Attorney General
                                       Civil Division

ERIC HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

ALEXANDER K. HAAS
Director
Civil Division, Federal Programs Branch

JACQUELINE COLEMAN SNEAD
Assistant Branch Director
Civil Division, Federal Programs Branch

 */s/ Lisa Zeidner Marcus*
LISA ZEIDNER MARCUS (N.Y. Bar # 4461679)
Senior Counsel
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L St., NW, Twelfth Floor
Washington, DC 20530
Tel: (202) 514-3336
Fax: (202) 616-8470
Email: lisa.marcus@usdoj.gov

*Counsel for Plaintiffs*

## <u>Certificate of Service</u>

I certify that on May 5, 2025, I served *Plaintiffs' Opposition to Defendants' Motion to Dismiss* via the Court's CM/ECF system upon Defendants via their counsel as follows:

Joshua B. Shiffrin
Bredhoff & Kaiser PLLC
805 15th Street, NW, Ste 1000
Washington, DC 20005
202-842-2600
Email: jshiffrin@bredhoff.com

Lane Martin Shadgett
Bredhoff & Kaiser PLLC
805 15th St NW, Suite 1000
Washington, DC 20005
323-243-8668
Fax: 202-842-1888
Email: lshadgett@gmail.com

Abigail V. Carter
Bredhoff & Kaiser P.L.L.C.
805 15th Street NW, Suite 1000
Washington DC, DC 20005
202-842-2600
Email: acarter@bredhoff.com

Charles L. Ainsworth
Parker, Bunt & Ainsworth, P.C.
100 East Ferguson, Suite 418
Tyler, TX 75702
(903) 531-3535
Email: charley@pbatyler.com

  */s/ Lisa Zeidner Marcus*
LISA ZEIDNER MARCUS
*Counsel for Plaintiffs*